UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal No. 4:24-cr-00183 |
| | § | |
| CHRISTOPHER WASHINGTON TORAL, | § | |
| Defendant. | § | |

### UNITED STATES RESPONSE TO DEFENDANT'S OPPOSED THIRD MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE

TO THE HONORABLE JUDGE OF THE SAID COURT:

The United States opposes any further modifications to Defendant Christopher Washington Toral's (hereinafter "Toral") conditions of pretrial release. United States Magistrate Judge Peter Bray after a detention hearing, set conditions of release for Toral, over the objection of the United States. *See Dkt.No. 14*. The United States believes that Toral would be a flight risk and danger to the community under anything less then conditions that are currently in place. The "stand alone" monitoring request was rejected by U.S. Magistrate Judge Peter Bray when he placed a curfew on the defendant from 7 p.m. to 6 a.m. The defendant can work as "a delivery driver" during the hours of 6:01 a.m. to 6:59 p.m. or seek other daytime employment during regular hours.

1

Counsel for Toral is requesting a modification for a job that Toral has yet to secure. "Stand alone monitoring" means that Defendant would "*have no residential curfew, no home detention, or home restrictions.*" The United States would like to remind this Court that U.S. Magistrate Judge Peter Bray considered the following facts when he issued the conditions for pretrial release:

1. The Defendant willingly transported what he believed to be approximately $700,000 in drug proceeds under the "protection" of his Department of Homeland Security badge;

2. Toral provided information to an Undercover FBI Agent on "license plates" of vehicles that were allegedly involved in stealing narcotics from the Gulf Cartel;

3. From November 2022 – January 2023, Toral mentioned to an FBI CHS multiple times that he had affiliates from Santo Domingo, Dominican Republic that were trying to sell over 100 kilograms of cocaine. Toral wanted the FBI CHS to meet with these people in the Dominican Republic, purchase the 100 kilograms of cocaine, and transport it to the United States. On January 20, 2023, the FBI CHS flew to the Dominican Republic to meet with Toral, but Toral informed the FBI CHS that his affiliates were not ready to meet with the FBI CHS in person;

4. On February 9, 2023, after completing a training session in Dallas, Texas for the Department of Homeland Security, the Defendant meet with an Undercover FBI Agent, posing as a member of the Gulf Cartel, and took approximately $200,000 that was wrapped in plastic and understood to be drug proceeds and drove it to Houston, Texas. That same day, he met with an FBI CHS, provided the approximately $200,000 in United States Currency and was paid $8000 in cash for delivering the drug money;

5. On February 28, 2023, the Defendant once again drove to Dallas, Texas. The Defendant meet with the same Undercover FBI Agent, posing as a member of the Gulf Cartel, and took approximately

$200,000 that was once again wrapped in plastic and said to be drug proceeds and drove it to Houston, Texas. Again, Toral met with an FBI CHS, provided the approximately $200,000 in United States Currency and was paid $8000 in cash;

6. During Toral's meeting with the FBI CHS on February 28, 2023, Toral began asking questions about purchasing cocaine from the FBI CHS and selling it to some of Toral's affiliates in San Antonio, TX. Toral was interested to know how much money he could make if he started selling cocaine himself;

7. On March 23, 2023, the Defendant took a commercial airline flight to Newark Airport in Newark, NJ. On March 26, 2023, Toral met with another FBI Undercover agent, posing as a member of the Gulf Cartel, at a mall in Elizabeth, NJ and took approximately $300,000 that was wrapped in plastic and placed it in his carry-on luggage. Toral then used his credentials as a federal agent to fly armed on a commercial airline flight to bypass TSA security checks. Toral flew from Newark, NJ to Houston, TX with the $300,000 in his carry-on luggage and then met with the Undercover FBI Agent from previous dates at a lake house in Montgomery, TX. Toral provided the $300,000 in United States Currency to the Undercover FBI Agent and was paid $24,000 in cash;

8. On May 24, 2023, the Undercover FBI Agent, posing as a member of the Gulf Cartel, told the Defendant that a load of cocaine was stolen from him and that he had the license plate belonging to the individual that stole the drugs. Toral was asked to run the license plate and provide the Undercover FBI Agent with the name and address of the individual that stole the drugs. Toral provided the Undercover FBI Agent with the requested information and was paid $2,000 in cash; and

9. On August 26, 2023, the Undercover FBI Agent, posing as a member of the Gulf Cartel, once again asked the Defendant to run a license plate and provide the Undercover FBI Agent with the name and address of the individual. Toral provided the Undercover FBI Agent with the requested information and was paid $2,000 in cash.

U.S. Magistrate Judge Bray also considered that Toral has extensive contacts in the Dominican Republic, Panama, and Ecuador and as an I.C.E. Deportation Officer,

understands how to circumvent border crossing controls. Toral still has many "friends and associates" living outside the United States in positions with immigration and border entry. U.S. Magistrate Judge Bray further considered when crafting the conditions of release for Toral, the following *personal* trips taken by Toral outside of the United States:

- 01/26/2022-01/30/2022- from Newark, NJ to Santiago de los Caballeros, Dominican Republic (returned via same airports)
- 02/05/2022- from Dulles, VA to Santo Domingo, Dominican Republic
- 02/11/2022- from Santiago de los Caballeros, Dominican Republic to Newark, NJ
- 02/14/2022 - 02/17/2022-from Newark, NJ to Santiago de los Caballeros, Dominican Republic (returned via same airports)
- 03/04/2022-from Houston, TX to Panama City, Panama
- 03/07/2022-from Quito, Ecuador to Houston, TX
- 03/10/2022-03/13/2022- from Houston, TX to Cancun, Quintana Roo, Mexico (returned via same airports)
- 05/06/2022-from Houston, TX to Panama City, Panama
- 05/09/2022-from Quito, Ecuador to Houston, TX
- 07/01/2022-from Houston, TX to Panama City, Panama
- 07/06/2022-from Quito, Ecuador to Houston, TX
- 07/11/2022-from Newark, NJ to Santo Domingo, Dominican Republic
- 07/19/2022-from Santiago de los Caballeros, Dominican Republic to Newark, NJ
- 09/03/2022-from Newark, NJ to Athens, Greece
- 09/09/2022-from Athens, Greece to Dulles, VA
- 09/15/2022-from Houston, TX to Quito, Ecuador
- 09/19/2022-from Panama City, Panama to Houston, TX
- 10/19/2022 - 10/24/2022-from Houston, TX to Panama City, Panama (returned via same airports)
- 01/11/2023-from Houston, TX to Quito, Ecuador
- 01/16/2023-from Panama City, Panama to Houston, TX

- 01/20/2023-from Miami, FL to Santiago de los Caballeros, Dominican Republic
- 01/25/2023-from Santiago de los Caballeros, Dominican Republic to Newark, NJ
- 03/04/2023-from Newark, NJ to Santiago de los Caballeros, Dominican Republic
- 03/06/2023-from Punta Cana, Dominican Republic to Houston, TX
- 05/10/2023-from Houston, TX to Panama City, Panama
- 05/15/2023-from Quito, Ecuador to Houston, TX
- 05/18/2023-from Newark, NJ to Santo Domingo, Dominican Republic
- 05/22/2023-from Santiago de los Caballeros, Dominican Republic to Newark, NJ
- 06/08/2023 – 06/19/2023 from Houston, TX to Panama City, Panama (returned via same airports)
- 06/30/2023-from Houston, TX to Quito, Ecuador
- 07/22/2023-from Punta Cana, Dominican Republic to Houston, TX
- 10/10/2023-from Newark, NJ to Barcelona, Spain
- 10/16/2023-from Madrid, Spain to Newark, NJ
- 10/18/2023 – 10/23/2023-from Houston, TX to Panama City, Panama (returned via same airports)
- 02/02/2024 – 02/06/2024-from Houston, TX to Rio de Janeiro, Brazil (returned via same airports

Additionally, on April 12, 2024, Pre-trial Services essentially set no conditions for Toral, and U.S. Magistrate Judge Peter Bray ultimately rejected Pre-Trial's recommendations, or lack thereof. *See Dkt.No. 11*. Counsel for the Defendant has asked for two modifications to the current conditions, and the United States was unopposed these modifications. *See Dkt.No's 21, 22, 23, 24*. While the U.S. Probation Officer may now agree with counsel for the Defendant, the United States

agrees with the conditions that were set by U.S. Magistrate Judge Peter Bray and that these conditions of release should not be altered any further.

Wherefore, this Court should deny the Defendant's Third Motion to Modify Conditions of Pretrial Release.

                                        Respectfully Submitted,

                                        ALAMDAR S. HAMDANI
                                        UNITED STATES ATTORNEY

By:   */s/ Carolyn Ferko*
       CAROLYN FERKO
       Assistant United States Attorney
       1000 Louisiana, Suite 2300
       Houston, TX  77002
       Ph: (713) 567-9562

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the foregoing instrument was delivered by ECF to counsel for Defendant on May 31, 2024.

                **ALAMDAR S. HAMDANI**
                **UNITED STATES ATTORNEY**

By: *s// Carolyn Ferko*
    CAROLYN FERKO
    Assistant United States Attorney