UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| vs. | § § | Criminal No. 4:24-cr-00183-S |
| CHRISTOPHER WASHINGTON TORAL, | § § § | |
| Defendant | § § | |

### PLEA AGREEMENT

The United States of America, by and through Nicolas J. Ganjei, United States Attorney for the Southern District of Texas, and Carolyn Ferko and John Marck, Assistant United States Attorneys, and the defendant, Christopher Washington Toral, and the defendant's counsel, pursuant to Rules **11(c)(1)(A) and 11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count Three of the Superseding Indictment. Count Three charges the defendant with **Laundering of Monetary Instruments,** in violation of Title 18, United States Code, Sections 1956(a)3(B) and 2. The defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment or sentence either charged in the indictment or information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 1956(a)3(B) and 2, is imprisonment up to twenty years and shall be fined not more than

1

$1,000,000.00. Additionally, the defendant may receive a term of supervised release after imprisonment of up to 3 years. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then defendant may be imprisoned for up to three (3) years, without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. §§ 3559(a)(1) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Potential Immigration Consequences

4. The defendant understands if he is not a citizen of the United States, the defendant's plea of guilty to Count Three will result in a criminal conviction that could lead to the defendant's subsequent deportation, removal, and/or exclusion from the United States. This conviction could also lead to the defendant being permanently barred from legally entering the United States after being deported or removed. In addition, the defendant's attorney has advised the defendant of the potential immigration consequences that could come about as a result of the defendant's plea of guilty to Count Three. After understanding the potential immigration consequences of pleading guilty to Count Three, the defendant still wishes to plead guilty as detailed in this plea agreement.

## Cooperation

5. The parties understand this agreement carries the <u>potential</u> for a motion for departure under Section 5K1.1 of the Sentence Guidelines. The defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should the defendant's cooperation, if any, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines Manual. This plea agreement <u>does not require the defendant to cooperate</u>, but should the defendant wish to do so the defendant agrees to persist in his/her guilty plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets as contemplated below in this agreement. The defendant understands and agrees that the United States may request that sentencing be deferred until any cooperation the defendant may provide is complete.

6. The defendant understands and agrees that "fully cooperate" as used herein, includes providing all information relating to any criminal activity known to defendant, including, but not limited to, any other individuals involved in drug trafficking in violation of the Controlled Substances Act or drug trafficking-related money laundering. The defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

    (a)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

    (b)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(c)  Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney can and will be prosecuted under the appropriate perjury, false statement or obstruction statutes;

(d)  Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation.

(e)  Should the recommended departure, <u>if any</u>, not meet the defendant's expectations, the defendant understands he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

## Waiver of Appeal

7.  Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.  In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her

guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

   (a.) If defendant pleads guilty to Count Three of the superseding indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

   (b.) If defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which defendant provided complete information regarding his/her role in the offense (if defendant's offense level is 16 or greater); and

   (c.) The United States agrees to not oppose a sentence recommendation at the low end of the guidelines range, as calculated by the Court.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines

sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute or should the Court order any or all of the sentences imposed to run consecutively, defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a) If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

   (c) At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he *is* guilty of the charges contained in Count Three of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of this offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the defendant's guilt:

   a.) Christopher Toral served as a Deportation Officer for DHS Immigration and Customs Enforcement in 2022, 2023, and part of 2024. As a Deportation Officer, Toral is a federal law enforcement agent at Montgomery Processing Center located in Conroe, Texas, in the Southern District of Texas.

   b.) Information previously provided to the FBI by the Confidential Human Source ("CHS")

has been proven credible and reliable. Prior to working as a source for the FBI, the CHS stated that the CHS had met Toral.

c.) On or about March 24, 2023, through March 26, 2023, Toral had agreed with FBI Undercover Employee ("UCE") and the CHS to transport $300,000 of drug proceeds from Newark, New Jersey, to Houston, Texas, on a commercial flight, bypassing security checks because Toral flew as federal law enforcement agent.

d.) Toral picked up the money from a UCE in Newark after he had traveled to New York for personal reasons. Toral packed the $300,000 in cash, which was wrapped in individual plastic bundles into a small rollaboard-type suitcase that he kept with him throughout the trip. Once he arrived at Newark Liberty International Airport, he proceeded to a special TSA checkpoint where he filled out a form indicating his status as a DHS agent and his badge number. By filling out the form, Toral bypassed the TSA security line and ensured that his suitcase and the "drug proceeds" were not inspected.

e.) Later that day on March 26, 2023, after Toral arrived at Houston International Airport, he met with multiple FBI UCE's at a lake house in Conroe, Texas. At that time, Toral gave the UCEs the $300,000 in alleged, drug proceeds and received $24,000 cash in payment for the transportation.

f.) Toral briefly socialized with the UCEs over food and tequila before stating that he would use his access to federal databases to run background checks on persons of interest to the UCEs. At some point while at the lake house, Toral went out to his vehicle and retrieved his badge to show to the UCEs.

g.) Prior to this date, beginning on February 3, 2023, following extensive negotiations with the CHS over his fee, Toral agreed to transport what he believed were drug proceeds from Dallas, Texas, to Houston, Texas, in his vehicle. On or about February 9, 2023, an FBI UCE met Toral in a Walmart parking lot (200 Short Blvd., Dallas, TX) at about 6:00 p.m. There, the UCE gave Toral a black bag containing $200,000 in cash of alleged, drug proceeds. Toral immediately placed the bag in the trunk of his personal vehicle. He then returned to the UCE's car, where he told the UCE that he was willing to take on more transportation jobs for him. The UCE told Toral that he needed someone to transport kilograms of cocaine. Toral responded that he was more comfortable transporting cash and offered to transport money to Texas from New York.

h.) Toral then transported the cash from Dallas to an H-E-B in The Woodlands, Texas, in his vehicle, arriving at approximately 9:00 p.m. There, he met with the CHS, handed over the cash, and received $8,000 cash for payment for the transportation. When asked by the CHS if he had been nervous during the trip, Toral showed the CHS his badge and confidently responded that if he had been stopped by police, he would have shown his badge and been released.

i.) On or about February 28, 2023, Toral agreed to a second transportation of drug proceeds. Again, Toral received $200,000 in cash, wrapped in plastic bundles from the UCE at a parking lot of a Kroger in Dallas, Texas. During that exchange, Toral declined to transport narcotics for the UCE.

j.) He departed the Dallas area and met the CHS in an H-E-B parking lot approximately three hours later. There, Toral gave the CHS the money and again received $8,000 in payment. He reiterated his willingness to transport drug money from New York to Houston and inquired into the price of a kilogram of cocaine, stating that he had a contact in Conroe interested in purchasing from the CHS. The CHS disclosed that he sourced his narcotics from the Gulf Cartel and that the organization would meet any local demand for narcotics.

## Breach of Plea Agreement

15. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he/she has an interest, unless defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

20. Defendant understands that under the Sentencing Guidelines the Court is permitted to order defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment. Subject to the provisions above, defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

21. This plea agreement is being entered into by the United States on the basis of

defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees to forfeit whatever interest he/she may have in assets related to the theft and sale of U.S. Government property, including any assets listed that may be listed in the Indictment.

22. Defendant consents to any agreed order of forfeiture or judgment, and further agrees to take all steps necessary to pass clear title to forfeitable assets to the United States, including, but not limited to, surrendering of title, signing a consent decree, stipulating facts regarding the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of defendant's assets to deliver all funds and records of such assets to the United States.

## Complete Agreement

23. This written plea agreement, consisting of fourteen (14) pages, including the attached addendum of defendant and his attorney, constitutes the complete plea agreement between the United States, defendant and his counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on ___February 27___, 2025.

_____
CHRISTOPHER WASHINGTON TORAL
Defendant

Subscribed and sworn to before me on ___February 27___, 2025.

NATHAN OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:
NICOLAS J. GANJEI
UNITED STATES ATTORNEY

By:   /s/ *Carolyn Ferko*              /s/ *John Marck*
      CAROLYN FERKO                    JOHN MARCK
      Assistant United States Attorney  Assistant United States Attorney

_____
Michael DeGeurin, Esq.
Dick DeGuerin, Esq.
Attorneys for Defendant

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| vs. | § § | Criminal No. 4:24-cr-00183-S |
| CHRISTOPHER WASHINGTON TORAL, | § § § § | |
| Defendant. | | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to defendant the provisions of those Guidelines which may apply in this case. I have also explained to defendant that the Sentencing Guidelines are only advisory and the court may sentence defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with defendant. To my knowledge, defendant's decision to enter into this agreement is an informed and voluntary one.

_____   2/27/25
Michael DeGeurin, Esq.        Date
Dick DeGuerin, Esq.
Attorneys for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement

13

with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____            2/27/25
CHRISTOPHER WASHINGTON TORAL                  Date
Defendant